IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CURTIS WRIGHT, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. MJG-02-3843 |
| THOMAS CORCORAN, ET AL., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

Defendant, Thomas Corcoran, by his attorneys, J. Joseph Curran, Jr., Attorney General of Maryland, and Stephanie Lane-Weber, Assistant Attorney General, in support of his Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, files this Memorandum of Law and states as follows:

**I.     Plaintiff's Claim**.

Plaintiff, an inmate, alleges that he was falsely accused of exposing himself in front of Cpl. R. Brown on October 19, 2001, and that consequently he was placed in full restraints too tightly for about 5 ½ hours, causing pain. Also, Plaintiff claims that due to the restraints he urinated and defecated on himself. Finally, for 30 days thereafter, according to Mr. Curtis, he was not allowed out of the cell without full restraints and security mittens. For relief, Plaintiff seeks $1,000,000.00 each in compensatory and punitive damages, and declaratory and injunctive relief.

## II.     Factual Background.

In support of this motion the following facts are presented:

On October 19, 2001, Plaintiff received a notice of infraction for openly masturbating in the cell window and continuing to do so when ordered to stop by Correctional Officer K. Brown. Officer Brown wrote the infraction under the penalties of perjury. Exhibit 1, Records Declaration, Exhibit 2, Notice of Infraction at 1. Plaintiff received a notice of the infraction and requested witnesses and an inmate representative. Exhibit 2 at 1. A hearing was held on October 31, 2001, Plaintiff was represented, and one witness's presence was waived and another witness was called to testify. Exhibit 2 at 2. The hearing officer recommended that Mr. Curtis be found guilty of 3 rules and that he be given a sentence of 150 days of segregation, with two 60 days consecutive, and a revocation of 114 days good conduct credits. Exhibit 2 at 3. Warden Thomas Corcoran approved the recommendations of the hearing officer on November 9, 2001. Exhibit 2 at 4.

At the Maryland Correctional Adjustment Center (MCAC), if an inmate flagrantly or intentionally disrespects any person by openly masturbating in another's view, an MCAC directive provides that the inmate may be restrained from behind in full restraints in his cell for up to 4 hours. MCAC-ID-110-3-1 (VI)(F)(a)(b). Exhibit 3, MCAC-ID-110-3-1.

Plaintiff has appeared to have exhausted his administrative remedies as to the notice of infraction, but not as to the allegations of too tight restraints on October 19,

2001, orbeing required to wear full restraints and mittens for 30 days when leaving his cell. Executive Director of the Inmate Grievance Office (IGO), states:

> [T]he IGO has identified a total of 24 grievances filed by Curtis Wright #206095 over the years. Of those 24 cases, 8 were filed on or before May of 2001, and they can therefore be excluded. Another 12 were filed on or after May of 2003, and they likewise have been excluded from further review. Of the remaining 4 cases, one involved an issue of postage; and another involved an issue of a "property book". Those 2 cases were therefore excluded from further review.
>
> I reviewed the 2 remaining files, IGO Nos. 20011605 and 20020029. IGO No. 20011605 dated 12/6/01 was received in the IGO office on December 10, 2001. That case involved the issue related to Wright's Disciplinary Conviction for the incident on 10/31/01 (i.e. he was observed masturbating. The "observation" was through a window. He pursued his appeal on the basis that it was reported that he was observed "in a window", and seemed to imply that it was impossible for a person to be "in" a window.) I conducted the preliminary review of that case and on January 14, 2002 I administratively dismissed it without a hearing. That was the final decision, and there is no evidence that Wright sought judicial review of that dismissal.
>
> IGO No. 20020029 dated January 6, 2002 was filed in the IGO on January 8, 2002. It was submitted as an appeal from ARP-MCAC-0951-01. Although Wright's submission was procedurally defective (i.e. he did not provide a copy of documentation to establish that he exhausted the remedies available to him through the ARP procedure), the subject of that complaint was presumably his claim that "security mittens" were unjustly applied to him "behind his back" during recreation periods between 10/22/01-10/24/01. That case was preliminarily reviewed by Paula R. Kramer (now Paula R. Williams), Associate Director. As a result of that review Ms. Kramer wrote to Mr. Wright on March 4, 2002 and allowed him an additional 15 days to submit the missing documentation needed to perfect his filing. Mr. Wright was advised that if his response was not received within that time period, the case would be administratively dismissed without further notice to him. When no response was received, the case was administratively dismissed without a hearing on March 22, 2002 and the IGO file was closed. There is no further correspondence in that file.

3

Exhibit 4, Declaration of Marvin Robbins, Executive Director of the inmate Grievance Office, at paragraph 10.

## III. Argument.

### A. Civil Rights Claim

To state a cause of action pursuant to 42 U.S.C. §1983, it is elementary that there must be an allegation of a violation of federal constitutional rights or law. *Juncker v. Tinney*, 549 F.Supp. 574, 583 (D.Md. 1982). Not every injury inflicted by a State official acting under color of law is a violation of the Fourteenth Amendment cognizable under §1983. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908 (1981), overruled in part on other ground, in *Daniels v. Williams*, 1065 S.Ct. 662 (1986) (loss of inmate's property where there is a State procedure to determine deprivation does not state a cause of action). The first inquiry in any §1983 suit is whether the plaintiff has been deprived of any right secured by the Constitution or federal law. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689 (1979). In this action, Plaintiff has failed to allege a deprivation of any rights, either constitutional or statutory, which would entitle him to relief under §1983.

### B. Due Process in Prison Disciplinary Proceedings

The Supreme Court established the requirements of due process in prison disciplinary proceedings in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The *Wolff* court held that, while prison disciplinary hearings fall within the scrutiny of the Fourteenth Amendment's Due Process Clause, the

4

magnitude of the pedological considerations strongly favors the governmental interest in the balance between competing state and private interests. *Id*., 418 U.S. at 562-3, 94 S.Ct. at 2977-78. The Court recognized that the prisoner's interest must be balanced against legitimate institutional needs of assuring the safety and security of correctional officials and prisoners and in advancing correctional goals.

In considering what procedural due processes are appropriate in prison disciplinary proceedings, the *Wolff* court affirmed that such proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so... ." *Wolff*, 418 U.S. at 561, 94 S.Ct. at 2977. "Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment and despair are commonplace....It is against this background that disciplinary proceedings must be structured by prison authorities; and it is against this background that we must make our constitutional judgments... ." *Wolff*, 418 U.S. at 562-3, 94 S.Ct. at 2977-8.

In *Wolff*, the Court held that the appropriate accommodation of the competing governmental and private interests consisted of the following minimum procedural due process in a prison disciplinary hearing: (1) advanced written notice of the disciplinary charges; (2) an opportunity to call witnesses (if consistent with institutional safety and correctional goals) and present documentary evidence in his or her own defense; and (3) a written statement by the fact finder of the evidence

relied upon and the reason for the disciplinary action. 418 U.S. at 563-67, 94 S.Ct. at 2977-79.  The Court stated, "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do not apply." *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2975.  The *Wolff* guidelines have been followed in this case as described in Section II of this Memorandum.

### C.   The Some Evidence Standard

Eleven years later the Supreme Court's decision in *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 2774, 86 L.Ed. 356 (1985), while reaffirming *Wolff*, indicated that only a minimum of due process is required in prison disciplinary proceedings in consideration of the strong government interest in administering a penal institution. Likewise, in *Zaczek v. Hutto*, 642 F.2d 74, 76 (4th Cir. 1981), the Fourth Circuit acknowledged the Supreme Court's policy of deference to prison officials in the exercise of their discretion in reasonably limiting due process in prison disciplinary proceedings.  This court reasoned that "[t]he discretion to curtail confrontation and cross-examination, whether of prisoners or of prison authorities, is even broader....[P]rison officials' judgments in these matters are not to be preempted by requiring *rounds that appeal to judges*." *Zaczek*, 642 F.2d at 77 (emphasis added) (citations omitted).

In *Hill*, 105 S.Ct. 2768, the Supreme Court expressly addressed the evidentiary standards required by the Due Process Clause in a prison disciplinary

hearing. The Court reasoned that, where the procedural requirements of due process established under *Wolff* are satisfied, substantive due process is also satisfied when there is "some evidence" which supports the decision of the prison disciplinary board. The Court stated:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . ." *Ascertaining whether the standard is satisfied does not require examination of the entire record, independent record that could support the conclusion reached by the disciplinary board. We decline to adopt a more stringent evidentiary standard as a constitutional requirement*. (quotations and citations omitted) (emphasis added).

105 S.Ct. at 2774.

The evidence presented at the hearing at issue constitutes "some evidence" to support the imposition of disciplinary sanctions.

Moreover, the fact that Plaintiff asserts that the testimony was false avails him nothing where he received all the process that was due. In *Hanrahan v. Lane*, 747 F.2d 1137 (7th Cir. 1984), an inmate alleged that correctional officers falsely brought disciplinary proceedings against him by planting false evidence and issuing a disciplinary ticket in retaliation for failure to pay an extortion demand. Noting that prisoners are entitled to be free from arbitrary action of prison officials, the court found nonetheless that the protections against such arbitrary action are the procedural due process requirements set out in *Wolff v. McDonnell*. Likewise, in

7

*Galimore v. Lane*, 635 F.Supp. 1367 (N.D. Ill. 1986), an inmate accused a correctional officer of bringing false charges against him. Because the inmate received the procedural protections mandated by *Wolff*, the court, relying upon *Hanrahan v. Lane, supra*, held that the complaint was legally insufficient to state a cause of action pursuant to 42 U.S.C. §1983. *See also Larson v. Mulcrone,* 575 F.Supp. 1 (N.D. Ill.Ed. 1982) (use of allegedly false information that formed basis for change in security status did not state a cause of action).

> **D. There was No Cruel and Unusual Punishment in the Use of Restraints**

The Supreme Court examined the use of force by correctional officers against inmates in a context of the Eighth Amendment's prohibition against cruel and unusual punishment in *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078 (1986). It set forth six (6) factors by which to analyze Eighth Amendment excessive force claims: (1) the need for the application of force; (2) the relationship between the need and the amount of force actually used; (3) the extent of the injury inflicted; (4) whether the force was applied in a good faith effort to maintain and restore discipline, or applied with malicious and sadistic intent to cause harm; (5) the defendant's reasonable perception of the extent of the threat; and (6) the effort to temper the severity of the response. *Id.* at 320-321. In *Norman v. Taylor*, 25 F.3d 1259 (4th Cir. 1994), the Fourth Circuit, reversing its earlier ruling and affirming the district court's decision to grant the defendant summary judgment, focused

8

particularly on *Whitley*'s factor involving the extent of the injury inflicted. The Fourth Circuit held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is <u>de minimis</u>." *Id.* at 1263. The Fourth Circuit reasoned that where a plaintiff's injury is such that a "reasonable juror could [not] conclude that he suffered anything more that *de minimis* injury, if any injury at all, or that any force used was `repugnant to the conscience of mankind,'" the plaintiff's claim cannot constitute cruel and unusual punishment. *Id.* (footnote omitted). *See also, Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996). *See also, Riley v. Dorton*, 115 F.3d 1159 (4th Cir. 1997) (pre-trial detainee's injuries--a slap on the face, an alleged welt, threats and handcuff pain-- were *de minimis* and not cognizable under 42 U.S.C. §1983). *See also, Taylor v. McDuffie*, 155 F.3d 379 (4th Cir. 1998) (absent extraordinary circumstances, *de minimis* injuries of swollen jaw and irritated mouth do not sustain pretrial detainee's constitutional cause of action). The basis for the requirement of more than *de minimis* injury was succinctly stated by the Fourth Circuit in *Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir.)(*en banc*), *cert. denied*, 522 U.S. 1030 (1997):

> The *de minimis* nature of [the plaintiff's] alleged injuries cannot be squared with [the plaintiff's] need to demonstrate excessive force amounting to punishment. ... Punishment must mean something other than trifling injury or negligible force. Otherwise, every touch would be actionable and every alleged "push or shove" would entitled plaintiff to a trial. This is no idle concern. Those in detention often detest those charged with supervising their confinement, and seek to even the score through the medium of a lawsuit. The Constitution does not exist, however, to scoop up every last speck of detainee discontent. To hold

9

that every last incident involving contact between an officer and a detainee creates a constitutional action, even in the absence of injury, trivializes the nation's fundamental document.

Moreover, the Supreme Court has specifically admonished that the Constitution is not a "font of tort law" to be "superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). "Although 'the least touching of another in anger is a battery,' ...it is not a violation of a constitutional right actionable under § 1983." *Johnson* [*v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)]. But, without a *de minimis* threshold, every "least touching" of a pretrial detainee would give rise to a section 1983 action under the Fourteenth Amendment. Not only would such a rule swamp the federal courts with questionable excessive force claims, it would also constitute an unwarranted assumption of federal judicial authority to scrutinize the minutiae of state detention activities. The *de minimis* rule thus serves the interest of our federal system by distinguishing claims which are cognizable under the Constitution from those which are solely within the jurisdiction of state courts.

Because an inmate's injury must be more than *de minimis* to state a constitutional claim, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973). Likewise, "'not every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Riley v. Dorton*, 115 F.3d at 1176, *quoting Hudson*, 503 U.S. at 9.

Injuries that have been found to be *de minimis* include: temporary swelling and irritation, *Taylor v. McDuffie*, 155 F.3d at 484-85 (where inmate claimed excruciating pain but did not seek medical care for 12 hours and no treatment was required or

10

prescribed); pain from tight restraints in place for six hours and a welt on the face from a slap, *Riley v. Dorton*, 115 F.3d at 1167; a sore, bruised ear, *Siglar v. Hightower*, 112 F.3d 191, 193 (5th cir. 1997); and a sore thumb caused by a blow from a key ring, *Norman v. Taylor*, 25 F.3d at 1263-64. *Cf. Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996)(sufficient degree of pain can in itself meet objective requirement of more than a *de minimis* injury, even in the absence of any "enduring injury").

"When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury <u>only</u> if it concludes that the evidence, viewed in the light most favorable to the claimant, 'will support a reliable inference of wantonness in the infliction of pain.'" *Stanley v. Hejirika,* 134 F.3d 629, 634 (4th Cir. 1998), quoting *Whitley v. Albers,* 475 U.S. 312, 322 (1986) (emphasis added). *Stanley* also cites *Williams v. Benjamin,* 77 F.3d 756, for the proposition that an inmate must prove both the subjective element as well as the objective element in the context of the relationship of the need for force to establish a constitutionally excessive force claim. *Stanley,* 134 F.3d at 629.

Here, the fact that Plaintiff was placed in full restraints for 5 ½ hours does not warrant federal intervention. There is simply no evidence that Plaintiff suffered more than *de minimis* injuries.

E.   **Failure to Exhaust Administrative Remedies**

11

As to Plaintiff's claim that he was placed in the restraints, that they hurt him, and that he relieved himself on himself, Plaintiff has not exhausted his administrative remedies. According to the declaration of Marvin Robbins, he received no grievances about those issues. Exhibit 4. Therefore, those issues should not be considered.

Exhaustion of the administrative remedies that are made available and mandatory by State law and DPSCS regulations is also required under federal law before an action may be brought by a prisoner under § 1983. Pursuant to the Prison Litigation Reform Act of 1995, ("PLRA"), federal law expressly and unequivocally requires exhaustion, stating: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1996). *(Chase v. Peay,* 286 F. Supp.2d 253 (D. Md. 2003), aff'd *per curiam*, 2004 WL 1205695 (4th Cir. 2004)

To exhaust administrative remedies within the meaning of 42 U.S.C. § 1997e(a), the inmate must pursue his administrative remedies to the highest available level. *See Maulick v. Central Classification Board*, 659 F. Supp. 24, 27 (E.D. Va. 1986). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Indeed, the Fourth Circuit has that

under the Prison Litigation Reform Act (PLRA) an inmate must exhaust all administrative remedies before he may proceed with a civil rights claim. In *Anderson v. XYZ Correctional Health Services, Inc.,* 407 F.3d 674 (4th Cir. 2005), the Court stated:

> <u>There is no doubt that the PLRA's exhaustion requirement is mandatory.</u> *See Porter [v.Nussle]* 534 U.S. [516] at 524 [(2002)] ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."(citations omitted and internal quotation marks omitted.)(emphasis added)

*Anderson*, 407 F.3d at 677. Further, so important is the statutory requirement that an inmate exhaust all remedies that the Fourth Circuit, while noting that it is an affirmative defense, acknowledges that a trial court may *sua sponte* raise the issue on its own motion or may dismiss a case where it is apparent on the face of the complaint that the inmate has failed to exhaust. It is an inmate's responsibility under the PLRA to pursue his administrative grievances until they receive a final denial of the claim, appealing through all available stages in the administrative process. *Chase v. Peay,* 286 F. Supp. 2d 523, 530 (D. Md. 2003) aff'd *per curiam*, 2004 WL 1205695 (4th Cir. 2004). Because Plaintiff has not exhausted all of his administrative remedies as to the issues of his wearing restraints on October 19, 2001, or the

alleged 30 days of wearing restraints and mittens when released from his cell, they should be dismissed.

### F.     Qualified Immunity

The Defendant asserts that he is entitled to summary judgment on the basis of qualified immunity as to all claims. The evidence has established that the Defendant has not violated any clearly established constitutional right of which a reasonable public official should have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3044 (1987); *Turner v. Dammon*, 848 F.2d 440 (4th Cir. 1988); *Taratino v. Baker*, 825 F.2d 772 (4th Cir. 1987); *Young v. Lynch*, 846 F.2d 960 (4th Cir. 1988) (application to disciplinary committee members). Qualified immunity "is intended to allow public officials to act, with independence and without fear of consequences, where their actions do not implicate clearly established rights." *Turner v. Dammon, supra*, at 443 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

Under the standard articulated in *Harlow v. Fitzgerald*, *supra*, and *Mitchell v. Forsyth*, 472 U.S. 511 (1985), the question of whether a government or public official is entitled to summary judgment based on qualified immunity generally turns on the "objective reasonableness of the action, assessed in light of the legal rules that were 'clearly established at the time the action was taken'". *Harlow v. Fitzgerald*, 457 U.S. at 818. Qualified immunity thus protects public officials not only from liability, but

from the vexations of trial. *See Mitchell v. Forsyth*, *supra*, at 526. The Fourth Circuit stated: "[O]fficials 'generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established rights of which a reasonable person would have known.'" *Turner v. Dammon*, *supra*, at 443 (quoting *Harlow v. Fitzgerald*, *supra*, at 818). Given the status of the law as set forth above, even if Plaintiff has stated a claim, Defendant's actions cannot be held to have violated "clearly established" legal rules.

Once the defense of qualified immunity is raised, the burden is on the plaintiff to show that the defendant's conduct violated the law and that such law was clearly established when the alleged violation occurred. *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir. 1993). The Plaintiff must demonstrate that "in light of the pre-existing law, the unlawfulness of the official action was apparent". *Bryant*, 994 F.2d at 1086, *citing Mitchell v. Rice*, 954 F.2d 187, 190 (4th Cir.), *cert. denied*, 113 S. Ct. 299 (1992). Plaintiff herein has not met his burden.

G.  **Summary Judgment**

Federal Rule of Civil Procedure 56© provides that summary judgment is appropriate:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511 (1986) (emphasis in original). Moreover, the Supreme Court has explained that the Rule 56© standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a): ". . . there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, *supra*, 477 U.S. 242, 106 S.Ct. at 2511; *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir. 1987). *See also*, *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553 (1986). Based upon this standard, the pleadings and exhibits, the Defendant is entitled to summary judgment.

IV. **Conclusion**.

Defendant respectfully requests this Court to dismiss the case or that summary judgment be entered in his favor.

Respectfully submitted,

J. JOSEPH CURRAN, JR.
Attorney General of Maryland

/s/
_____
STEPHANIE LANE-WEBER
Assistant Attorney General
General Bar No. 00023

St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland  21202
(410) 576-6340 (Telephone)
(410) 576-6880 (Telefax)

Attorneys for Defendant

G:\LANEWEBS\WPDATA\WRIGHT 3843\Pleadings\Memorandum.wpd